IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 23 2020

CLERK, U.S. DISTRICT COURT
By_____
          Deputy

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
|         Plaintiff | § | |
| | § | CASE No. 3:19-CV-917-M (BT) |
| v. | § | CASE No. 3:17-CR-456-M (BT) |
| | § | |
| ENRIQUE GALVAN | § | |
|         Defendant | | |

---

**PETITIONER'S RESPONSE TO THE REPLY OF THE
UNITED STATES OF AMERICA DOCUMENT
NUMBER 27 FILED FEBRUARY 10, 2020**

---

NOW COMES, the petitioner Enrique Galvan, by and through pro-se, who hereby with due leave of this Honorable Court files the following response to the Government's response to his 2255 motion and supporting evidence dated September 16, 2019.

The petitioner respectfully asks this Honorable Court to liberally construe his pleadings under the Supreme Court Standards as announced in **Haines v. Kernez**, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 625 (1972). Furthermore this reply has been drafted and prepared by inmates helping inmates, and the petitioner hereby requests the Court's consideration in the fact. Unlike the Department of Justice with approximately 10,000 highly trained professional attorneys, the petitioner is relying on non experienced inmates with limited legal resources, forty year old typewriter technology and an extremely limited legal library including limited case law resources.

SECTION I

The Government's response is fundamentally flawed and factually incorrect. <u>The response was also late filed and as a result the Court should grant the petitioner's motion to vacate, reinstate the Appeal or alternatively grant an evidentiary hearing to further develope the record and review the evidence of the petitioner's claims.</u>

**A)** In section 3 of the Government's response, part (A), the Government is not clear by misstating the facts. Using a statement obtained on January 31, 2020, that was only obtained by the Government's three requested and then granted extentions, the Government claims through the petitioner's former counsel Frank Perez, that he was never asked or instructed to Appeal. The Government in relying on the former counsel affidavit has made another fatal error. The error is that the affidavit which the petitioner maintains in the enclosed **EXHIBIT 1**, as fraudulent and misleading, fails to explain that former counsel met with the defendant to discuss the option of an Appeal.

The petitioner's argument is clearly stated on page 4 of the memorandum in support of his 2255 "to show prejudice in the context of a failure to timely file an appeal, **the movant must only demonstrate that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appeal." Flores-Ortega**, 528 U.S., at 484. **If the movant shows that counsel "acted contrary to his client's wishes, or that he failed to fulfill his duty to attempt to determine his client's wishes, prejudice is to be presumed." Gomez-Diaz v. United States**, 433 F. 3d 788, 793 (11th Cir. 2005). **The lack of relative merit of that appeal has no place in the determination of whether counsel deprived the movant of his right to appeal. Flores-Ortega**, 528 U.S., at 484. see also **Garza v. Idaho**, 139 S. Ct. 738, 748 (2019); **Gomez-Diaz**, 433 F. 3d at 793. **However, showing nonfrivolous grounds for appeal may lend weight to the movant's contention that he would have appealed but for counsel's failure. Flores-Ortega**, 528 U.S., at 486.

In response to that false affidavit the petitioner has written the State Bar seeking to complain, and has included his statement under penalty of perjury that the claim of Mr. Perez is infact one hundred percent false. **SEE EXHIBIT 1 and 2** attached: Regardless the Court need not consider the affidavit of former counsel as it does not state evidence sufficient to overcome former counsel's

2

obligations under **Garza v. Idaho, Flores-Ortega** or the 11th Circuit case of **Gomez-Diaz v. United States,** "acted contrary to his clients wishes, or that he failed to fulfill his duty to attempt to determine his clients wishes, prejudice is to be pressumed."

**B)** In the second part of the same paragraph the Government states, **"Galvan received a Direct Appeal, which was dismissed based on his failure to prosecute."** Although factually somewhat correct, it is in no way legally accurate, and is likely to, or is affirmative misrepresentation.

**C)** For whatever reason that is still yet unknown, former counsel Mr. Perez failed to motion the Court to withdraw as counsel of record, after the sentencing hearing. **This was prejudicial.**

Mr. Galvan requested appoinment of counsel to Appeal his conviction on June 19, 2018, Document 37. This request to the Court was denied in part or full because Mr. Perez was still counsel of record. Had Mr. Perez simply withdrawn from the case after filing the notice of appeal, Mr. Galvan could certainly have been appointed counsel, and the Direct Appeal would have proceeded normally. This argument was explained in the petitioner's original 2255 motion Document 5, and included with that explanation was the fact that the same issue appeared in **United States v. Martinez,** U.S. Dist. Court, Dallas Division, CR No. 3:18-CR-002-L1, December 19, 2019, (5th Cir.), where this Court, the Honorable Justice Renee H. Toliver, granted **Martinez'** motion, because the Court found the defendant had shown good cause for his late filing.

**D) Martinez** is somewhat helpful because Mr. Perez and his associates, failed to file the notice of appeal despite numerous calls from Mr. Martinez' family to do so. Here like in **Martinez,** Mr. Galvan wanted to appeal, told Mr. Perez this yet nothing took place. SEE EXHIBIT 3 **United States v. Martinez,** also EXHIBIT 13, on **PACER** with document (stricken) Number 5.

**E)** Then not surprisingly Mr. Perez notarizes a statement claiming the opposite, which given the claims in both the stricken 2255 and the second 2255 **Mr. Perez, now in what seems to be against the rules of professional conduct, is stating that Mr. Galvan, was apparently very satisfied with the mandatory maximum 20 year sentence** and did not want to appeal because as Mr. Perez claims, "Mr. Galvan's claim that he asked me to file a notice of appeal in this case

is false." It is the petitioner's position that most defendants, the petitioner included with a newborn, wife and five year old son, would not sit idly by and be satisfied with a 20 year sentence through a guilty plea.

The **Martinez** Court's ruling against Mr. Perez and his associates is somewhat instructional here as are multiple other cases quoted in the 2255 motion. "The Court further notes that even if a defendant does not instruct counsel to file an appeal, counsel has a constitutional duty to consult with the defendant about an appeal." **Roe v. Flores-Ortega**, 528 U.S. 470, 480, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). In this context consultation means, "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id., at 478. When deciding whether counsel adequately consulted with the defendant regarding the right to appeal, a Court, "must take into account all the information counsel knew or should have known." Id., at 480.

The Government's Apendix A, the affidavit of Mr. Frank Perez, has four short points numbers 1-4 not once does it claim or state, "after or before sentencing I discussed an appeal or the appeal options with Mr. Galvan."

Therefore it is very clear that Mr. Perez would have placed that declaration into the affidavit, if he had actually done what, **Flores-Ortega** required him to do. But he did not.

This fact alone, seems to prove that the claims in Mr. Perez affidavit are not accurate nor factual, and certainly unreliable at summarizing counsel obligations with respect to the petitioner's appeal rights.

**CONCLUSION PART 1:**

**1)** Mr. Perez' affidavit is clearly insufficient to determine if he consulted with Mr. Galvan about the appeal process, or options and as a result the Government's reliance on it is flawed and clearly defective.

**2)** None of the Government's argument in this claim cures the issue or explains why no appeal was filed, and secondly like **In Martinez**, Mr. Perez failed to file a simple Notice of Appeal, or even remove himself from the record freeing up the Court to appoint counsel for Mr. Galvan. This was highly prejudicial.

**3)** Furthermore the evidence missing in the affidavit critical to the affidavits claims and Government's claims plus Mr. Perez' same conduct in **Martinez** are evidence in support, Independent Indica of the fact the petitioner's claims on this issue are clearly meritorious and require further development or evidentiary review, if the Court is not satisfied with the record's evidence.

**4)** The petitioner, in pointing to the statement of former counsel, makes one final point in this issue, that there is no reference to any conversation or visits of Mr. Perez to Mr. Galvan after the sentencing. Counsel violated Mr. Galvan's Sixth Amendment rights and was ineffective for failing to not only advise and consult, but also failing to even meet with his client, and simply perform what the Supreme Court has called, simply a miniscual task in filing the Notice of Appeal, and secondly removing himself from the record.

**SECTION II**

The petitioner relys upon the exhibits and Habeas Corpus Pleadings, Briefs/Memorandum in Support of the 2255 motion to vacate to argue the Constitutional violations of the petitioner, including but not limited to the Sixth Amendment, (ineffective assistance of counsel), the Fourteenth Amendment, (violation of Due Process) and also the Fourth Amendment and Sixth Amendment combined plus Due Process to argue the petitioner's involuntary plea process and involuntary obtained guilty plea.

**SECTION III**

In the pages that remain the petitioner will briefly summarize the Government's flawed argument regarding the illegal searches; Section 3 Argument and Analysis: Part B "Galvan's claim that his attorney was ineffective for failing to file a motion to suppress is waived in part and otherwise meritless."

Case law overwhelmingly supports that the petitioner's plea was involuntary obtained. See; **Morris v. Thaler,** 425 Fed. Appx 415 (5th Cir. 2011) stating that "a petitioner was permitted to challenge his guilty plea as involuntary based upon ineffective assistance of counsel when his attorney failed to file a motion to suppress the central evidence in the prosecution's case." See **United States v. Cavitt,** 550 F. 3d 430 (5th Cir. 2008), "petitioner could challenge guilty plea as involuntary based upon counsel's failure to file a motion to suppress."

The Government also relies on **Cavitt**, and **Hill v. Lockhart, and Hill** stated, **"the longstanding test for determining the validity of a guilty plea is, whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant."** See **North Carolina v. Alford**, 400 U.S. 25, 31, 27 L. Ed 2d 162, 191 S. Ct. 160, 56 Ohio Ops, 2d 85 (1970): also see **Boykin v. Alabama**, 395 U.S. 238, 242, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969); see **Machibroda v. United States**, 368 U.S. 487, 493, 7 L. Ed. 2d 473, 82 S. Ct. 510 (1962).

**"A voluntary and informed choice,"** is a clear statement. The Government is asking this Court to consider that the petitioner or all defendants for that matter, could somehow, uninformed, make an informed choice to go to trial over accepting a plea. This thinking fails because, neither the Government or the Court could second guess what would motivate the trial decision over the guilty plea choice. Innocent Defendants Plead Guilty more often than society thinks, the Innocence Project has exonerated, 38 that through DNA evidence were set free even though they pled guilty, to murder and manslaughter.

The petitioner also stated (in his Memorandum in Support of his 2255 motion to vacate) the following under penalty of perjury; see Page 21 Paragraph 2 **"The record contains a declaration by Mr. Galvan under penalty of perjury that he would have insisted on pleading guilty conditionally or would have not pleaded guilty if his counsel had informed him of the viability of a suppression motion."**

Further the Government claims in error that, "moreover, Galvan's counsel acted reasonably in declining to file a motion to suppress"..."however, the record shows that Galvan's counsel acted reasonably, as there was no legitimate basis to challenge the search"..)
**(1) FIRST:** The Government claims former counsel, Frank Perez, "acted reasonably in declining to file a motion to suppress," **yet there is no evidence whatsoever that Mr. Perez even knew about the Fourth Amendment, investigated the Fourth Amendment violations or was astute on Fourth Amendment law, whereby he could have filed a suppression motion.**

**(2) SECOND:** The Government claims there was no basis to challenge the illegal two searches is simply prosperous. The Government agents arrested the entire family, newborn, mother, five year old and Mr. Galvan. **Yes only Mr. Galvan was**

**handcuffed, but the mother and children were arrested, detained, searched and forced to stand in near hundred degree heat for approximately two hours. Furthermore the search of the home was based upon threating to take the children away from the mother.** This is the type of Government misconduct the founding generation thought about when they wrote the Constitution, to protect the privacies of life and home.

The Government's claims are so outrageous that they simply cannot stand. There are detailed explanations of case law supporting the Fourth Amendment violations, and not a single explanation from the Government in the affidavit of Mr. Frank Perez as to how he investigated or determined why in his view, as this seems to be what the Government is claiming, why in his view there was no Fourth Amendment violation.

## CONCLUSION

"Justice suffers when any acussed is treated unfairly," **Brady v. Maryland**, S. Ct. 1194 (1963), and because, we now have, "for the most part a system of pleas, not a system of trials," **Lafler v. Cooper**, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), counsel's responsibilities to ensure a knowing and voluntarily obtained plea process is paramount to the success of our Justice System. The petitioner's arguments are complex Constitutional violations, yet they are not hypothetical, they are fact based and the record supports and proves this. Mr. Perez made an agreement to assist the prosecution in helping to deny the petitioner's rights to Due Process and Fair Justice. Yet Mr. Perez is silent on the substance, the research and effort he was required under the Sixth Amendment to provide the petitioner with a testing and weighing of the Government's case in particular to the illegal searches and resulting prejudice. **Mr. Perez failed to perform the miniscual task of filing a simple Notice of Appeal, and then motioning the Court to remove himself from the record. Mr. Perez is still as of February 24, 2020, has not filed to remove himself as the attorney of record.**

**The affidavit of Mr. Perez is fundamentally flawed in the fact that it is vague. As an attorney, now working as a witness for the prosecution against a former client, his affidavit does not explain anything or mention at all the Fourth Amendment violations. This is incredibly deficient as Mr. Perez in line 2, instead of saying, "I discussed the handling of this case with Mr. Galvan multiple times," could state, "I discussed the Fourth Amendment suppression**

options, illegal searches of the home and vehicle on August 15, 2017, and we determined the following." But Mr. Perez does not.

Secondly Mr. Perez could have stated, "I met with Mr. Galvan after sentencing, explained to him the appeal options as I am required to do under Flores-Ortega, Garza and other Supreme Court cases,and we reached a conclusion to not file an appeal." Yet why is the affidavit so short on fact and detail. Clearly an evidentiary hearing would clarify these issues, but the record as is stands is a very clear argument for Constitutional injury of the petitioner that is overwhelmingly supported by case law.

Finally, the Government's three extentions resulted in late filing and although the petitioner is uncertain if asking the Court to vacate based also upon the Government's late filing, and the fact that it was prejudicial because it allowed the Government to convince Mr. Perez to testify via affidavit against his client. Plus the fact that Mr. Perez still has to remove himself from the record as representing the petitioner, is fundamentally prejudicial and somewhat outrageous conduct.

The petitioner asks this Court as further stated in his motions and the 2255 to vacate his sentence due to Constitutional injury and/or alternatively appoint counsel for Mr. Galvan, have Mr. Perez removed from the record and order an evidentiary hearing to question Mr. Perez and further expand the record Constitutional injury and the petitioner's claims under 2255, Habeas Corpus.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on March 16, 2020.

ENRIQUE GALVAN
Signature of movant Enrique Galvan

ᵉˣʰⁱᵇⁱᵗ 1 ᵖᵃᵍᵉ 1 ᵒᶠ 4

ENRIQUE GALVAN
FED. ID. 35896-208
FCI OAKDALE II
P.O. BOX 5010
OAKDALE, LA. 71463

March 16, 2020.

## EXHIBIT 1: AFFIDAVIT IN SUPPORT OF PETITIONER'S RESPONSE TO THE REPLY OF THE GOVERNMENT, DOCUMENT No. 27 FILED FEBRUARY 10, 2020.

My name is Enrique Galvan, I am currently incarcerated at FCI OAKDALE II in OAKDALE, LA. This is my third affidavit under penalty of perjury, my fifth statement under penalty of perjury as both Memorandums in Support of my 2255 Motion, Doc. No. 5, and the Brief/Memorandum filed September 25, 2019, are also sworn under penalty of perjury.

As the Court is aware, I am serving a 20 year sentence. As I have previously stated, I arrived at FCI OAKDALE II and a few months later, when describing my, "case events" and "former counsel's deficient representation", I was told by some inmates that I had a viable Constitutional injury claim, a Due Process claim and a Meritorious Fourth Amendment Argument.

I live today with the frustration of the mistakes I have made, I am a good father and husband and have my wife and two sons that keep me motivated to work hard and I hope to get back home. I have worked hard over the last months to explain my claims and have been helped by inmates.

When I was convicted, I had no clue of my Constitutional Rights, nor did my former counsel, Mr. Frank Perez advise me of my rights, the illegal search, or anything related to it.

Mr. Perez signed an affidavit for the prosecution on January 31, 2020, claiming fraudulently, that I never instructed him to appeal the 20 year sentence. This is absolutely false. Mr. Perez, who instructed me to plead guilty also stated I would get farless time than 20 years if I did plead guilty.

When faced with a 20 year sentence, the maximum, why could not I have taken a chance on a trial if the end result both ways would be the same, with trial there is always the Governments requirement to prove their allegations, and there is always a chance that the jury could consider me innocent. Yet none of this took place because Mr. Perez failed to give me Constitutionally adequately advise.

With what I have learned and with what Mr. Perez should have explained to me, I would have taken the trial option because the actions of the agents I now realize, were illegal and this could have impacted a trial and the jury in my favor.

The fact that the agents used the safety of my newborn and five year old sons, the heat that day of the arrest of nearly 100° and the threats to take my two sons away from their mother if I did not do what they wanted, should have been something Frank Perez, investigated and filed motions on to not only place the events in the record, but also to confirm the unconstitutional, illegal and prejudicial actions of the agents.

Furthermore, I am concerned as to what Mr. Perez is trying to claim, our relationship is clearly hostile and I have written to the Texas Bar Association to file a misconduct complain. Please See Enclosed EXHIBIT No. 2.

I did instruct Mr. Perez to file an appeal, yet he did not. He also did not remove himself from the record or case file as counsel, and this also I believe, frustrated or compromised my request for the appoinment of counsel, See Document No. 37; entered June 19, 2018. That motion was denied, Document No. 39, two days later on June 21, 2018, by the Court.

Today, I have the assistance of inmates at FCI OAKDALE II, who read and write english and can translate english to spanish. I did not have the same level of help when I wrote to the court on June 19, 2018, trying to preserve my right to appeal. Why Mr. Perez did not appeal is a question I hope gets asked of him in Court.

Considering the millions of people, Aliens and Americans who only speak spanish, if there was an option to receive the Court's instructions in spanish it certainly would have helped me. Because even today every document must be translated by inmates.

EXHIBIT 1  PAGE 3 OF 4

The Government in Document No. 27, filed 02/10/20 Page 12 of 17; "Response to 28 U.S.C.S. § 2255 Motion", included (Government Appendix B) and this line, "The Fifth Circuit's notice included a financial affidavit for Galvan to complete."

This financial affidavit was not necessary as the PSR clearly confirmed on Page 13 of that Document, Paragraph 63, financial condition: ability to pay: The Document is on PACER as Document 21-1 filed 01/02/18, (Page Id 55), Case No. 3:17-CR-00456-M. I have no assets or income, plus the affidavit did even arrive at OAKDALE, as I cannot recall receiving it, would have arrived at least 10 days or more after the Court's decision to refuse my request for appointed counsel.

I have been told by inmates reviewing my Case Documents, that the Court likely refused my request for appointed counsel, because Frank Perez, was still on the record as counsel. So the Court could not appoint new counsel because Mr. Frank Perez, would not file a motion or Anders Brief to remove himself or his firm from the record.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on March 16, 2020.

ENRIQUE GALVAN
Enrique Galvan

| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

### AFFIDAVIT

BEFORE ME, the undersigned authority, personally appeared Frank A. Perez known to me to be same and who stated under oath the following:

I, Frank A. Perez, a resident of Dallas County, Texas hereby declare as follows:

1.   I represented Enrique Galvan in Cause No. 3:17-CR-456-M(01) in the United States District Court for the Northern District of Texas, Dallas Division.

2.   I discussed the handling of this case with Mr. Galvan multiple times.

3.   At no time did Mr. Galvan ask me to appeal his case or to file a notice of appeal in this case.

4.   Mr. Galvan's claim that he asked me to file a notice of appeal in this case is false.

I hereby swear under penalty of perjury, that all information in this affidavit is true and correct.

_____
FRANK A. PEREZ

Date: 1-31-2020

SUBSCRIBED AND SWORN TO before me by *Frank A. Perez* on the 31st day of January, 2020. Witness my hand and official seal.

_____
Notary Public in and for the State of Texas

OLGA LETICIA VASQUEZ
Notary Public, State of Texas
Comm. Expires 01-15-2022
Notary ID 6811907

My Commission Expires:

1-15-2022

(Seal)

EXHIBIT 2
PAGE 1 of 5

ENRIQUE GALVAN
FED. ID. 35896-208
FCI OAKDALE II
P.O. BOX 5010
OAKDALE, LA. 71463

March 12, 2020.

STATE BAR OF TEXAS
1414 COLORADO ST.
AUSTIN, TX. 78701

RE: MISCONDUCT AND FRAUD COMPLAINT AGAINST ATTORNEY FRANK A.
PEREZ, OF 9110 SCYENE ROAD, DALLAS, TEXAS, 75227:
STATE BAR No. 00789541

ATTN; ATTORNEYS COMPLAINTS AND MISCONDUCT:

DEAR BAR ASSOCIATION:

My name is Enrique Galvan, I am currently incarcerated at FCI
OAKDALE II, in OAKDALE, LOUISIANA. I pled guilty in my criminal
case and received the maximun sentence possible of 20 years, My
Case Numbers; 3:19-CV-917-M (BT), 3:17-CR-456-M (BT), and PACER
files will help explain the following complaints. I have also to
help explain this complaint enclosed a copy of my Reply to the
Government's Court Ordered Response to my 2255 motion to Vacate
my sentence due to ineffective assistance provided by Mr. Perez
resulting in an involuntary and unintelligently made guilty plea
I entered because of the action or in part, lack there of, with
respect to the case and plea process.

On January 31, 2020, Mr. Perez joined the Government's efforts
to deny me a Direct Appeal. When Mr. Perez was my attorney he
failed to simply file the Notice of Appeal.

1

EXHIBIT 2   PAGE 2 of 3

I have enclosed with this complaint, copies of my affidavit plus
the Reply and also the case of **Martinez**, where Mr. Perez did the
same mistakes as in my case and also a copy of his one Page
Affidavit. **See Exhibits Attached**, 1, 2, and 3.

Although this conduct of an attorney joining the Government's
argument and pleadings against his client may not be that uncommon,
as this record proves, his allegations are both misleading and
false.

Furthermore the fact that he has still as of yet not removed
himself from the case must also be prejudicial and in violation
of the conduct or ethical rules.

This claim is well supported by the detailed facts and evidence
within this record. **Exhibit 2** Pages 2-8, include a fairly good
outline of Mr. Perez' misconduct. Further to this in my Memorandum
in Support of the 2255, PAges 2-4, 9-10, 16-20, 23-24, and 26-27,
all help detail very clear claims against Mr. Perez, these pages
are located in Document No. 19; Brief/Memorandum in Support filed
09/24/2019.

Document No. 5; Filed 06/04/2019 (which was stricken due to being
over the page limit), plus Document 13 help to further details
issues with Mr. Perez and the similarities of the **Martinez** case
where he as in this case, simply neglected by choice to not follow
clients instructions and file a simple Notice of Appeal.

Document No. 5 is both instructive and detailed. On the following
pages you will find issues regarding this complaint against Mr.
Perez, explaining in detail his ineffective assistance and
**Strickland** negligence. Pages; 2-12, 14, 16, 18, 20, 22-30, 33-34,
37-38, 40-50, 52-58 and 61-68.

I will gladly provide copies of these documents but as an inmate,
it is both expensive and difficult. I request you obtain them from
PACER. As you will note the **Martinez** case, is listed as **Exhibit
No. 13**; attached to document number 5:

I declare (or certify, verify, or state) under penalty of perjury
that the foregoing is true and correct.

Executed on March 12, 2020.

ENRIQUE GALVAN
Signature of Enrique Galvan

*EXHIBIT 3*
*PAGE 1 OF 4*

---

**UNITED STATES OF AMERICA, v. SERGIO ALVAREZ MARTINEZ, DEFENDANT.**
**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS**
**DIVISION**
**2018 U.S. Dist. LEXIS 218752**
**CRIMINAL NO. 3:18-CR-002-L-1**
**December 19, 2018, Decided**
**December 19, 2018, Filed**

---

**Editorial Information: Subsequent History**

Adopted by United States v. Martinez, 2019 U.S. Dist. LEXIS 3118 (N.D. Tex., Jan. 8, 2019)

**Editorial Information: Prior History**

United States v. Martinez, 2018 U.S. Dist. LEXIS 39227 (N.D. Tex., Feb. 20, 2018)

**Counsel**            {2018 U.S. Dist. LEXIS 1}For Sergio Alvarez Martinez, also known as Sergio Alvarez, Defendant: Frank A Perez, LEAD ATTORNEY, Law Office of Frank A Perez, Dallas, TX; Clark Eugene Birdsall, Law Office of Clark Birdsall, Dallas, TX.
              For USA, Plaintiff: Myria Wynn Boehm, LEAD ATTORNEY, United States Attorney's Office, Northern District of Texas, Dallas, TX.

**Judges:** RENEE H. TOLIVER, UNITED STATES MAGISTRATE JUDGE.

**Opinion**

**Opinion by:**            RENEE H. TOLIVER

**Opinion**

**(USCA NO. 18-11321)**

**Findings, Conclusions and Recommendation OF THE United States Magistrate Judge**

Pursuant to 28 U.S.C. § 636(b) and the District Judge's *Order of Reference*, this case is before the United States Magistrate Judge for findings and recommendation regarding whether the untimely filing of Defendant's pro se notice of appeal was due to excusable neglect or good cause. Doc. 53. For the reasons that follow, the Court finds Defendant has shown good cause for his late filing and that an extension of the time to appeal should be granted.

On August 29, 2018, the *Judgment in a Criminal Case* was entered in this cause. Doc. 45. On October 9, 2018, the District Clerk filed Defendant's pro se *Notice of Appeal*, which was signed September 30, 2018, and postmarked October 3, 2018. Doc. 47. Subsequently, the United States{2018 U.S. Dist. LEXIS 2} Court of Appeals for the Fifth Circuit remanded this case for determination of whether excusable neglect or good cause entitles Defendant to an extension of time to appeal under Fed. R. App. P. 4(b)(4). Doc. 52.

**I. Findings of Fact**

An evidentiary hearing was held on December 14, 2018. Defendant appeared in person and was represented by Assistant Federal Public Defender Gabriela Vega (appointed by the Court in

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

anticipation of the evidentiary hearing). The Government was represented by Assistant United States Attorney Rachael Jones. After considering the pleadings, testimony, and arguments and proffers of counsel, the Court makes the following findings of fact:

A. Defendant retained Attorney Frank A. Perez to represent him in this criminal case; however, attorneys Clark Birdsall and Carlos Gomez also represented Defendant during the pendency of the case.

B. Attorney Clark Birdsall represented Defendant at his rearraignment hearing on February 20, 2018, when Defendant pled guilty to an information of the United States Attorney charging him with possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1)&(b)(1)(C). Doc. 31; Doc. 33. Defendant's guilty plea was pursuant to a written plea agreement that{2018 U.S. Dist. LEXIS 3} contained a waiver of appeal provision and was the result of plea negotiations that resulted in Defendant pleading guilty to an offense that capped his prison exposure at 20 years. Doc. 26.

C. At sentencing, Defendant was represented by Attorney Carlos Gomez, who had entered his appearance as counsel a few days prior. Defendant was sentenced to 204 months' imprisonment, which was well below the Sentencing Guidelines imprisonment range and was capped by the statutory maximum and several months less than what defense counsel requested.

D. In the seconds following the sentencing hearing while Defendant and counsel were still at the podium, Attorney Gomez discussed with Defendant that the sentence imposed was a good outcome and asked Defendant if he wanted to appeal. Defendant did not answer, and subsequently was taken back to the U.S. Marshal's holdover facility. Counsel did not follow up with Defendant in the Marshal's holdover or after he was returned to jail.

E. Neither Carlos Gomez, **Frank Perez**, nor Clark Birdsall followed up with Defendant about whether he desired to appeal.

F. Defendant was aware that the deadline for filing his notice of appeal was 14 days after the entry of judgment.{2018 U.S. Dist. LEXIS 4}

G. The Court entered the *Judgment in a Criminal Case* on August 30, 2018. Thus, the deadline for timely filing notice of appeal was September 13, 2018. Doc. 52.

H. During the 14 days following the Court's entry of judgment, Defendant was still represented by Carlos Gomez, **Frank Perez** and Clark Birdsall. At the time Defendant filed his *pro se* notice of appeal Defendant was still represented by Carlos Gomez, **Frank Perez**, and Clark Birdsall. The Court permitted Carlos Gomez, **Frank Perez** and Clark Birdsall to withdraw on October 25, 2018.

I. Defendant's *pro se* notice of appeal is deemed filed on September 30, 2018, the day he ostensibly presented it to jail officials for mailing.

## II. Analysis

A district court may extend the time for filing a notice of appeal by thirty days if the defendant can show excusable neglect or good cause for not meeting the deadline. *See* Fed. R. App. P. 4(b)(4). The United States Supreme Court's flexible interpretation of the excusable neglect standard controls the determination under Rule 4(b). *United States v. Clark*, 51 F.3d 42, 44 (5th Cir. 1995) ("*Clark I*") (citing *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)). Equitable considerations in light of all the relevant circumstances guide the Court's analysis. *Id.* Such considerations include possible prejudice to the late filer, the length of

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the{2018 U.S. Dist. LEXIS 5} delay and the impact on judicial proceedings, the reason for the delay, and whether the defendant acted in good faith. *Id.* However, the excusable neglect standard under Rule 4(b)(4) should not be construed so strictly as to conflict with the equitable and flexible inquiry enunciated in *Pioneer. Clark I*, 51 F.3d at 44.

After careful review of the evidence in this case, the Court finds that Defendant has demonstrated the requisite good cause for failing to timely to file his *pro se* notice of appeal and to warrant the grant of an extension. First, there is no indication that Defendant acted in bad faith in failing to timely file his pro se notice, and the cause of the delay seems reasonable. Second, the 17-day delay in filing the pro se *Notice of Appeal* is *de minimis*, as would be any impact on the criminal proceedings of granting the extension. Notably, the government has not indicated any negative impact that permitting the notice would have on the proceedings. Finally, prejudice may result to Defendant if the extension is not granted, since he would forfeit the direct appeal he wants to pursue.1

Defendant testified that at his request, his family members repeatedly called counsel's office regarding the filing of the{2018 U.S. Dist. LEXIS 6} appeal without response. This suggests a clear interest on Defendant's part in pursuing an appeal.

The Court further notes that even if a defendant does not instruct counsel to file an appeal, counsel has a constitutional duty to consult with the defendant about an appeal.2 *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). In this context, consultation means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. When deciding whether counsel adequately consulted with the defendant regarding the right to appeal, a court "must take into account all the information counsel knew or should have known." *Id.* at 480.

Here, by his own admission, Attorney Gomez had only seconds to confer with Defendant after sentencing. Attorney Gomez knew that Defendant did not respond to the specific inquiry of whether he wanted to appeal. At a minimum, some follow up was required to adequately "consult" with Defendant regarding appeal, however, none occurred. Under these circumstances, Defendant's expectation that one or more of his attorneys would visit him at the jail to discuss his appellate rights-regardless of whether they told him they would-was reasonable.{2018 U.S. Dist. LEXIS 7} Defendant's confirmation that he was aware of the requirement that the notice of appeal be filed within 14 days of judgment, is of no moment, since he correctly believed that he was still represented by counsel during the relevant period. *Cf. Randolph v. Cain*, 412 Fed. Appx. 654, 658 (5th Cir. 2010) (defendant is not entitled to hybrid representation) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 182, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984)). Indeed, Defendant's reliance on counsel's continued representation is evident in the language of his pro se *Notice of Appeal*:

> Defense counsel promised defendant that notice of appeal would be filed. As of today's date, defendant has not received confirmation that notice was filed by defense counsel. Defendant asks that this Honorable Court accept this notice of Appeal *if defense counsel did not file one* in this case.Doc. 47 at 1 (emphasis added).

In sum, equitable considerations and the reason for the delay support the conclusion that Defendant has demonstrated the requisite good cause for his failure to timely file his pro se *Notice of Appeal*.

### III. Conclusion

Based on the foregoing, the Court should extend the deadline for filing Defendant's notice of appeal by an additional 30 days under Fed. R. App. P. 4(b)(4), and deem Defendant's pro se *Notice of Appeal*, Doc. 47, timely filed.

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**SO RECOMMENDED**, December 19, {2018 U.S. Dist. LEXIS 8} 2018.

/s/ Renee H. Toliver

RENEE H. TOLIVER

UNITED STATES MAGISTRATE JUDGE

### Footnotes

1

Despite Defendant's waiver of the right to appeal in his plea agreement, he nonetheless retained the right to challenge his conviction on direct appeal. *See United States v. Palmer*, 456 F.3d 484, 487-89 (5th Cir. 2006); *see also United States v. Imeh*, 255 Fed. Appx. 833, 835 (5th Cir. 2007) (per curiam) (remanding because court improperly denied Rule 4(b)(4) motion to extend the time to appeal based on defendant's waiver of appeal).

2

Defendant contends that he told counsel on more than one occasion prior to the sentencing hearing that he wanted to appeal. *See United States v. Clark*, 193 F.3d 845, 846-47 (5th Cir. 1999) (*"Clark II)* (counsel's failure to file a notice of appeal at defendant's request is per se ineffective assistance and constitutes excusable neglect). Although defense counsel dispute Defendant's claim that he indicated a desire to appeal, resolution of that issue is not necessary to the Court's determination

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.

ENRIQUE GALVAN



CERTIFICATE OF FILING AND SERVICE

I, Enrique Galvan, hereby certify that I have served 3 true correct copies of the following:

Petitioner's Response to the Reply of the United States of America, and exhibits, which is deemed filed at the time it was delivered to prison authorities for forwarding, *Houston v. Lack, 487 U.S. 266 (1988), upon the respondent and/or its attorney(s) of record by placing same in a sealed first-class postage prepaid envelope addressed to the United States District Court of Texas, Dallas Division. The Clerk of the Court; 1100 Commerce Street, Rm. 1452, Dallas, Texas-75242, and deposited into this institution internal mail system located at FCI OAKDALE II, P.O. BOX 5010, OAKDALE, LOUISIANA, 71463.

I hereby certify that on March 16, 2020, I forwarded a copy of the foregoing documents to the Court at the address above;

_Enrique Galvan_
Enrique Galvan

*Pursuant to Fed. R. App. F25 (a)(2)(c), "A paper filed by an inmate confined in an institution is timely filed if deposited in the institution's internal mail system on or before the last day for filing."



ENRIQUE GALVAN
FED. ID. 35896-208

LEGAL MAIL